## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| CHRISTOPHER QUINONES, :<br>    *Plaintiff*, :<br>                          :<br>       v.                       :<br>                          :<br>COMMISSIONER, *et al.*, :<br>    *Defendants*. : | CIVIL ACTION NO. 23-CV-5176 |

### **MEMORANDUM**

**Pappert, J.**                                                                                              February 13, 2024

Christopher Quinones, a prisoner currently housed at the Curran-Fromhold Correctional Facility, filed this civil rights action under 42 U.S.C. § 1983 over his exposure to COVID-19. Named as Defendants are the "Commissioner," "Medical Director," and Major Tommage.[1] Each are named in their individual and official capacities. Quinones has also applied to proceed *in forma pauperis*. For the following reasons, the request to proceed *in forma pauperis* will be granted and the case will be dismissed on statutory screening pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).

I[2]

Quinones alleges that on or about December 21, 2021 while detained at CFCF, "Defendants exposed [him] to COVID-19 daily and [he] felt ill with COVID 19." (Compl.

---

[1] The Court understands "Commissioner" to be a reference to the Commissioner of the Philadelphia Department of Prisons and "Medical Director" to be a reference to the Medical Director of CFCF. All three Defendants are alleged to be "staff of the PDP, with duties of care, custody, and daily operation of the PDP." (Compl. at 1.) Each also allegedly "were with knowledge of COVID 19." (*Id.*)

[2] The facts set forth in this Memorandum are taken from Quinones's Complaint (ECF No. 1). The Court adopts the pagination assigned to the Complaint by the CM/ECF docketing system.

at 1-2.) He contends that "Defendants allowed individuals with COVID or COVID exposure in direct contact with Plaintiff knowingly." (*Id.* at 2.) Exposed inmates allegedly were moved into Quinones's housing unit from quarantine without testing negative for the virus and others were falsely described as clear of COVID-19. (*Id.*) Quinones came down with the virus and as a result suffered chest pain, body smell, taste issues, and loss or impaired bodily functions, and continues to suffer shortness of breath. (*Id.*) He asserts that his constitutional rights have been violated and seeks money damages and injunctive relief in the nature of "idle pay monthly of $49.00."[3] (*Id.* at 2-3.)

II

The Court will grant Quinones leave to proceed *in forma pauperis*.[4] Accordingly, 28 U.S.C. § 1915(e)(2)(B)(ii) requires the Court to dismiss the Complaint if it fails to state a claim. The Court must determine whether the Complaint contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations omitted). "'At this early stage of the litigation,' '[the Court will] accept the facts alleged in [the *pro se*] complaint as true,' 'draw[] all reasonable inferences in [the plaintiff's] favor,' and 'ask only whether [that] complaint, liberally construed, . . . contains facts sufficient to state a plausible [] claim.'"

---

[3] Quinones's request for injunctive relief is not proper and is dismissed. To be entitled to injunctive relief a plaintiff must show that he "has suffered irreparable injury; (2) there is no adequate remedy at law; (3) the balance of hardships tips in [his] favor; and, (4) granting an injunction would not be against the public interest." *Ctr. for Investigative Reporting v. Se. Pa. Transp. Auth.*, 975 F.3d 300, 317 (3d Cir. 2020) (citation omitted). Quinones's request for injunctive relief in the form of "idle pay" is simply another form of money damages, meaning that he has an adequate remedy at law for his alleged injury.

[4] Because Quinones is a prisoner, he must still pay the full amount of the filing fee for this case in installments as required by the Prison Litigation Reform Act.

*Shorter v. United States*, 12 F.4th 366, 374 (3d Cir. 2021) (quoting *Perez v. Fenoglio*, 792 F.3d 768, 774, 782 (7th Cir. 2015)). Conclusory allegations do not suffice. *Iqbal*, 556 U.S. at 678. Because Quinones is proceeding *pro se*, the Court construes the allegations of the Complaint liberally. *Vogt v. Wetzel*, 8 F.4th 182, 185 (3d Cir. 2021). However, "'pro se litigants still must allege sufficient facts in their complaints to support a claim.'" *Id.* (quoting *Mala v. Crown Bay Marina, Inc.*, 704 F. 3d 239, 245 (3d Cir. 2013)).

III

Quinones asserts deliberate indifference claims.[5] The vehicle by which federal constitutional claims may be brought in federal court is 42 U.S.C. § 1983. "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988). To establish a basis for a Fourteenth Amendment violation based on conditions of confinement under the deliberate indifference standard, a pretrial detainee must allege that those conditions amount to punishment. *Bell v. Wolfish*, 441 U.S. 520, 538 (1979). "Unconstitutional punishment typically includes both objective and subjective components." *Stevenson v. Carroll*, 495 F.3d 62, 68 (3d Cir. 2007). "[T]he

---

[5] Publicly available records indicate that Quinones pled guilty to murder and related charges on February 10, 2023, but has not been sentenced for those crimes. *Commonwealth v. Quinones*, CP-51-CR-0008848-2021 (C.P. Philadelphia). Thus, Quinones's claims are properly analyzed under the Fourteenth Amendment's Due Process Clause. *See Graham v. Connor*, 490 U.S. 386, 392 n. 6 (1989) (stating that the Eighth Amendment's Cruel and Unusual Punishments Clause does not apply until an inmate has been both convicted of and sentenced for his crimes); *Hubbard v. Taylor*, 399 F.3d 150, 164 (3d Cir. 2005) (stating that the Due Process Clause applies to claims of pretrial detainees).

3

objective component requires an inquiry into whether the deprivation was sufficiently serious and the subjective component asks whether the officials acted with a sufficiently culpable state of mind." *Id.* (internal quotations and alterations omitted).

### A

Quinones has named each Defendant in both their individual and official capacities. Claims against City officials named in their official capacities are indistinguishable from claims against the City itself. *See Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985) ("Official-capacity suits . . . 'generally represent only another way of pleading an action against an entity of which an officer is an agent.'") (quoting *Monell v. N.Y.C. Dept. of Soc. Servs.*, 436 U.S. 658, 690, n. 55 (1978)). "[A]n official-capacity suit is, in all respects other than name, to be treated as a suit against the entity." *Id.*

To state a claim for municipal liability, a plaintiff must allege that the defendant's policies or customs caused the alleged constitutional violation. *See Monell*, 436 U.S. at 694; *Natale v. Camden Cnty. Corr. Facility*, 318 F.3d 575, 583-84 (3d Cir. 2003). The plaintiff "must identify [the] custom or policy, and specify what exactly that custom or policy was" to satisfy the pleading standard. *McTernan v. City of York,* 564 F.3d 636, 658 (3d Cir. 2009). It is not enough, however, to allege the existence of a policy or custom. "A plaintiff must also allege that the policy or custom was the 'proximate cause' of his injuries." *Estate of Roman v. City of Newark*, 914 F.3d 789, 798 (3d Cir. 2019) (citing *Kneipp v. Tedder*, 95 F.3d 1199, 1213 (3d Cir. 1996)). This can be done "by demonstrating an 'affirmative link' between the policy or custom and the particular constitutional violation" alleged. *Id.* Allegations that simply paraphrase the

4

standard for municipal liability, are too vague and generalized to support a claim against the City. *See, e.g.*, *Szerensci v. Shimshock*, No. 20-1296, 2021 WL 4480172, at *7 (W.D. Pa. Sept. 30, 2021) ("Plaintiffs' conclusory allegation, which generally paraphrases the relevant standard, is insufficient to state a claim for § 1983 liability under *Monell*.") (citing cases).  Because Quinones has not identified a policy of the City of Philadelphia and has failed to allege that a City policy was the proximate cause of his alleged injuries, his official capacity claims are not plausible and will be dismissed.

B

Quinones asserts individual capacity claims against the Commissioner, the Medical Director and Major Tommage for constitutional violations based on deliberate indifference because he was exposed to and contracted COVID-19 while incarcerated at CFCF.  Quinones alleges that the Defendants exposed him to COVID-19 by allowing other detainees with the disease or who had been exposed to the disease to knowingly have contact with him.  He also asserts that exposed inmates allegedly were moved into his housing unit from quarantine without testing negative and others were falsely stated to not have the virus.  This claim is also not plausible for several reasons.

First, "[a] defendant in a civil rights action must have personal involvement in the alleged wrongs" to be liable. *See Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988); *see also Jutrowski v. Twp. of Riverdale*, 904 F.3d 280, 290 (3d Cir. 2018) ("Each Government official, his or her title notwithstanding, is only liable for his or her *own* misconduct.") (quoting *Iqbal*, 556 U.S. at 677) (emphasis in original); *Dooley v. Wetzel*, 957 F.3d 366, 374 (3d Cir. 2020) ("Personal involvement requires particular 'allegations of personal direction or of actual knowledge and acquiescence.'" (quoting *Rode*, 845 F.2d

at 1207)). *See Iqbal*, 556 U.S. at 676 (explaining that "[b]ecause vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution"). "Although a court can infer that a defendant had contemporaneous knowledge of wrongful conduct from the circumstances surrounding a case, the knowledge must be actual, not constructive." *Chavarriaga v. New Jersey Dept. of Corr.*, 806 F.3d 210, 222 (3d Cir. 2015) (citing *Baker v. Monroe Twp.*, 50 F.3d 1186, 1194 (3d Cir. 1995); *Rode*, 845 F.2d at 1201 n.6. Quinones fails to allege that the three named Defendants were personally involved in the acts he describes in his Complaint.

Second, Quinones only alleges conduct by the "Defendants" collectively. Where there are multiple events and defendants at issue, alleging personal involvement often cannot be accomplished by repeatedly and collectively referring to the "Defendants" as a group without clarifying the specific basis for each Defendant's liability. *See Lawal v. McDonald*, 546 F. App' x 107, 113 (3d Cir. 2014) (agreeing with the district court that the repeated and collective use of the word "Defendants" "fail[ed] to name which specific Defendant engaged in the specific conduct alleged'").

Third, in its decision in *Hope v. Warden York County Prison*, 972 F.3d 310, 325-31 (3d Cir. 2020), the United States Court of Appeals for the Third Circuit affirmed that "[t]o establish deliberate indifference [in the COVID-19 context, the prisoner plaintiffs] must show the Government knew of and disregarded an excessive risk to their health and safety." *Id.* at 329 (citing *Nicini v. Morra*, 212 F.3d 798, 811 (3d Cir. 2000)). The Court of Appeals further held that "[t]he context of the Government's conduct is essential to determine whether it shows the requisite deliberate indifference," and that,

in evaluating this context, a reviewing court must defer to the expertise of both medical officials and jail administrators, and not assume a constitutional defect where concrete action has been taken in response to the COVID-19 pandemic as constitutional rules "are not subject to mechanical application in unfamiliar territory." *Id.* at 329-30 (quoting *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 850 (1998)). Thus, where the facility has taken concrete steps towards mitigating the medical effects of COVID-19 on a detention facility, a prisoner will fall "well short" of establishing that the facility and its staff were deliberately indifferent toward his medical needs in light of the virus even though they cannot entirely "eliminate all risk" of contracting COVID, notwithstanding even serious preexisting medical conditions the prisoner may have. *Id.* at 330-31; *see also Mincy v. Governor of the Commonwealth of Pennsylvania*, No. 21-3263 (3d Cir. Sept. 9, 2022) (*per curiam*) (affirming dismissal of amended complaint and the finding that further amendment would be futile where "many preventative measures that were taken from the start of the pandemic, including the suspension of in-person visits, screening of staff for the virus, inmate quarantines, and the provision of masks and cleaning materials. In light of these measures and the unprecedented and evolving nature of the pandemic, Mincy does not have a plausible claim that prison officials disregarded an excessive risk of harm."); *Muata v. Hicks*, No. 21-3210, 2022 WL 2526692, at *1 (3d Cir. July 7, 2022) ("Even if plaintiffs could show that Slaughter and Hicks knew of the risk posed by COVID-19, despite its unprecedented and unpredictable nature, they have failed to allege that either defendant disregarded that risk when creating the prison's policies.").

Quinones's allegations, that he became ill because the Defendants exposed him to COVID-19 by allowing other detainees with the disease or who had been exposed to the disease to have contact with him, are insufficient to allege a plausible constitutional claim under the deliberate indifference standard as applied in *Hope*. *See Hope*, 972 F.3d at 330 (explaining that Constitution does not require government to entirely eliminate risk of contracting COVID-19 in correctional setting, stating "[plaintiffs] argue that the Government must eliminate entirely their risk of contracting COVID-19. That task is not the constitutional standard, however"); *see also Pumba v. Kowal*, No. 22-2082, 2022 WL 2805520, at *5 (E.D. Pa. July 18, 2022) (holding that permitting a pod worker who tested positive for COVID-19 to clean plaintiff's cell block without wearing a mask, and presumably exposing plaintiff to COVID-19 failed to state a plausible claim and dismissing claim with prejudice on screening); *Chapolini v. City of Philadelphia*, No. 22-284, 2022 WL 815444, at *15 (E.D. Pa. Mar. 17, 2022) (holding that allegation that defendants required plaintiff to have multiple cellmates who came through the CFCF intake unit without first undergoing proper quarantine failed to state a plausible claim because there was no allegation that any conditions were imposed for the express purpose of punishment or that the conditions were excessive in relation to their legitimate purpose of managing the spread of the virus). Quinones's allegations about prison officials placing detainees in quarantine and conducting testing, whether effective or not, is some indication that the officials took steps towards mitigating the medical effects of COVID-19 on the facility, but is nonetheless too undeveloped to allege a plausible claim. Because there is no allegation that the Defendants created conditions at CFCF with the express purpose of punishment or that

8

the conditions were excessive in relation to their legitimate purpose of managing the spread of COVID-19 at CFCF, Quinones's claim is not plausible.

IV

For the foregoing reasons, the Court will dismiss Quinones's Complaint but he will be granted leave to file an amended complaint if he is capable of alleging additional facts to address the defects the Court has identified in his original Complaint.  An appropriate Order will be entered separately.

**BY THE COURT:**

*/s/ Gerald J. Pappert*
**GERALD J. PAPPERT, J.**